UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DISTRICT

| | | |
|---|---|---|
| MCSWAIN BUSINESS VENTURES, | ) | |
| LLC dba Quality Built Pergolas, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 1:23-cv-3213 |
| | ) | |
| Vs. | ) | |
| | ) | |
| CHICAGOLAND PERGOLAS & | ) | |
| PAVILIONS INC., and | ) | |
| | ) | |
| JOHN S O'BRIEN | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, MCSWAIN BUSINESS VENTURES, LLC dba Quality Built

Pergolas, by and through the undersigned attorney and files this petition against the Defendants,

CHICAGOLAND PERGOLAS & PAVILIONS INC. and JOHN S O'BRIEN, and states as

follows:

## INTRODUCTION

1.  This is a complaint against Defendants for unfair competition including breach of

non-compete agreement, tortious interference with business contracts, interference with

economic advantage, trade libel/slander, copywrite infringement, violation of the Illinois Trade

Secrets Act (765 ILCS 1065), and violation of the Illinois Uniform Deceptive Trade Practices

Act (815 ILCS 510/).

## PARTIES

2.  Plaintiff, MCSWAIN BUSINESS VENTURES, LLC dba Quality Built Pergolas

(hereinafter ("Plaintiff" or "QBP"), is an Indiana Limited Liability Company and a citizen of the

State of Indiana and maintains its principal place of business at 441 Helmsburg Rd. #1339, Nashville, Indiana 47448 and is engaged generally in the manufacture and sale of residential pergolas. All members of MCSWAIN BUSINESS VENTURES, LLC are citizens of the state of Indiana.

3. The Defendant, Chicagoland Pergolas & Pavilions INC., is an Illinois corporation registered and active as a domestic corporation in Illinois, which maintains its principal place of business at 5745 Washington St, Downers Grove, IL 60516 and is engaged generally in the manufacture and sale of residential pergolas in competition with Plaintiff.

4. The Defendant, John S O'Brien (hereinafter "O'Brien"), is a citizen of the State of Illinois and resides at 5745 Washington St, Downers Grove, IL 60516 and is President and owner of Chicagoland Pergolas & Pavilions INC.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under diversity of citizenship as the Plaintiff is an Indiana Limited Liability Company whose members all reside within the State of Indiana and the Defendants are citizens of the State of Illinois, and the amount in controversy exceeds $75,000.00 per 28 U.S. Code § 1332(a)(1).

6. Venue is proper in, and Defendants are subject to the personal jurisdiction of this Court, because they reside within the judicial district of the Court per 28 U.S. Code § 1391(b)(1).

## ALLEGATIONS OF FACT

7. On or about December 2019, Defendant O'Brien began working for the Plaintiff as a contractor in a sales position.

8.   On or about January 1, 2020, the Plaintiff asked O'Brien to sign a non-compete agreement as a condition of continued work with QBP (hereinafter referred to as a "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

9.   Don McSwain, the President of QBP, signed the Agreement on behalf of QBP.

10. O'Brien took the Agreement.

11. QBP asked O'Brien to return the signed Agreement.

12. O'Brien never returned a signed Agreement.

13. O'Brien continued to work for QBP after being asked to sign the Agreement.

14. By failing to renounce the Agreement and by continuing to work for QBP, O'Brien accepted the Agreement by his silence.

15. The Agreement states in section 1, "As such, Individual shall be restricted from competing with the Company in any manner, or utilizing any Company secrets, or information, which would compete with, or which he has learned, or maintained over the time of his employment with Company, or contacting Companies clients (past and present) for the restricted period."

16. The agreement states that the restricted period will continue for three (3) years after the termination of the relationship with QBP.

17. The restricted territory is defined in the agreement as 400 miles from the home office.

18. The Agreement prohibits O'Brien from soliciting any employees of QBP to leave the employ of QBP.

19. The Agreement prohibits O'Brien from soliciting any clients or customers of QBP.

20. QBP has built pergolas at its own expense to be used as displays at nurseries and outdoor retailers across multiple states, including Indiana, Kentucky, and Ohio.

21. The owners of these establishments allowed QBP to setup these displays, which remained the property of QBP.

22. QBP placed its business cards and literature at these displays.

23. In early 2021, O'Brien had an opportunity to visit the pergola manufacturing partner of QBP.

24. O'Brien took many photos of the operation and asked lots of questions, thereby gaining access to the proprietary information of QBP.

25. Later in 2021, O'Brien began competing with QBP while still working for QBP.

26. O'Brien began using the trade name, Tri-State Pergolas and Pavilions, to compete with QBP.

27. On information and belief, O'Brien, himself or through an associate, replaced the business cards of QBP with business cards of Tri-State Pergolas and Pavilions at locations where QBP had displays.

28. On information and belief, O'Brien, himself or through an associate, removed the literature of QBP at locations where QBP had displays.

29. On July 2, 2021, O'Brien incorporated Chicagoland Pergolas & Pavilions INC. (hereinafter "Chicagoland") in Illinois to compete with QBP.

30. O'Brien ended his relationship with QBP in mid-July, 2021 after incorporating Chicagoland.

31. In 2022, O'Brien solicited several employees of QBP to leave QBP's employment to work for Chicagoland, knowing that these employees had Non-Compete Agreements with QBP.

4

32. O'Brien solicited Levi Crews, the lead installer at QBP, to leave QBP and work for Chicagoland.

33. Levi Crews had a Non-Compete Agreement with QBP.

34. O'Brien solicited Mark Nickley, the sales director at QBP, to leave QBP and work for Chicagoland.

35. Mark Nickley had a Non-Compete Agreement with QBP.

36. O'Brien solicited Jessica Duncan, the scheduler at QBP, to leave QBP and work for Chicagoland.

37. Jessica Duncan had a Non-Compete Agreement with QBP.

38. O'Brien knew of the existence of each of the QBP employees' Non-Compete Agreements.

39. O'Brien continued to use his QBP email address, john.qbpergolas@gmail.com after his employment ended.

40. O'Brien used his QBP email address to take business for Chicagoland from past and prospective QBP customers.

41. O'Brien posted or caused to be posted photos from QBP customer projects on the Chicagoland website claiming it was the work of Chicagoland.

42. Many of these project photos are the property of QBP and were posted on the QBP website.

43. The QBP website has a copyright notice on it.

44. Chicagoland's website contained multiple photos of QBP customer projects and claimed they were Chicagoland projects.

45. O'Brien routinely posted disparaging comments on Chicagoland's Facebook page about his competitors, of which QBP was insinuated.

46. On information and belief, O'Brien routinely emailed disparaging comments about QBP in response to QBP customer emails requesting service.

47. QBP is the only large provider of pergolas in the Midwest other than Chicagoland.

48. QBP's sales were down by $923,057.00 from 2021 to 2022.

49. QBP's gross profit less cost of labor was down $338,236.00 from 2021 to 2022.

## COUNT I – BREACH OF NON-COMPETE AGREEMENT

50. Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

51. The Agreement between QBP and O'Brien is legally enforceable.

52. The Agreement was in writing.

53. QBP made the offer and signed the Agreement.

54. O'Brien accepted the Agreement through his silence.

55. There was consideration in a continued working relationship and the promises contained in the Agreement.

56. O'Brien breached the Agreement by competing against QBP within the restricted period and within the restricted territory.

57. O'Brien breached the Agreement by soliciting QBP employees to leave QBP within the restricted period and within the restricted territory.

58. O'Brien breached the Agreement by soliciting QBP customers within the restricted period and within the restricted territory.

59. QBP suffered damages from lost sales and profits as a result of the breach.

WHEREFORE, Plaintiff prays for relief as set forth below.

6

**COUNT II – TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE**

60. Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

61. Plaintiff had a reasonable expectancy of entering into a valid business relationship through his past customers.

62. Plaintiff had a reasonable expectancy of entering into a valid business relationship through people who contacted the former employee QBP email addresses.

63. Plaintiff had a reasonable expectancy of entering into a valid business relationship through the locations where it had displays, business cards and promotional materials.

64. The Defendants had knowledge of the expectancy from O'Brien's position working with QBP.

65. The Defendants intentionally and unjustifiably interfered with the expectancy by substituting Chicagoland's materials and business cards at QBP's display locations.

66. The Defendants intentionally and unjustifiably interfered with the expectancy by continuing to communicate with former and prospective customers of QBP through their QBP email addresses.

67. The Defendants intentionally and unjustifiably interfered with the expectancy by soliciting former and prospective customers of QBP.

68. Plaintiff suffered damage resulting from the Defendants' interference through lost sales and profits.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS CONTRACTS**

69. Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

7

70. Plaintiff had a valid contractual relationship with its employees through the non-compete agreements the employees signed.

71. The Defendants were aware of these contracts from O'Brien's position with QBP and the fact that he also received the same contract.

72. The Defendants intentionally and unjustifiably solicited QBP employees, including Levi Crews, Mark Nickley, and Jessica Duncan, to induce them to breach their non-compete agreements.

73. QBP employees, including Levi Crews, Mark Nickley, and Jessica Duncan, violated their contracts as a result of the Defendants' solicitation.

74. Plaintiff suffered damages through lost sales and profits and from costs of finding and training replacement workers.

WHEREFORE, Plaintiff prays for relief as set forth below.

### COUNT IV – TRADE LIBEL / COMMERCIAL DISPARAGEMENT

75. Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

76. Chicagoland posted on its Facebook page, "Did you know that some companies are using inferior "contractor grade" paints instead, that only cost $10.00 or $11.00 per gallon?? Not sure what another builder may be using? ALWAYS ask the sales rep to show you a can, and then do your research!"

77. This statement was false and demeaning about the quality of plaintiff's goods or services.

78. Plaintiff has suffered damage to its reputation due to these statements and lost sales and profits as a result.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT V – BUSINESS DEFAMATION

79. Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

80. Chicagoland posted on its Facebook page that it knew another pergola company with "an Absentee Owner", then listed the other employee positions of QBP and stated "and the ALL GET PAID FROM YOUR BANK ACCOUNT, before your pergola even gets built!!! Yikes! Put your money into your home, NOT into someone else's pocket!", thus insinuating that QBP was stealing money from customers.

81. QBP is the only other large pergola company in the Midwest, so there is not mistake as to whom the Chicagoland post referred to.

82. In another Facebook post, O'Brien stated, "Some pergola companies have owners that don't even live in the Chicagoland area, and instead live hundreds of miles away, and NEVER speak to their customers. Not sure where another pergola company's ownership is? Ask the sales representative.", referring to QBP's owner, Don McSwain and implying inattentive customer service at QBP.

83. QBP's integrity as a business has been impugned by these statements.

84. The statements in the Facebook posts were false.

85. There was no privilege associated with the publication of these Facebook posts.

86. Plaintiff has suffered damage to its reputation due to these statements and lost sales and profits as a result.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT VI – VIOLATION OF THE ILLINOIS TRADE SECRETS ACT
### (765 ILCS 1065)

87. Plaintiff repeats and realleges paragraphs 5 through 49 as if fully set forth herein.

88. Under the Illinois Trade Secrets Act (765 ILCS 1065), Plaintiff's customer information contained in the QBP email account is considered a trade secret. *See* 765 ILCS 1065/2 (d).

89. Plaintiff's customer information was developed over many years with considerable effort, further supporting its classification as a trade secret.

90. On information and belief, O'Brien misappropriated the customer information by using it to compete with Plaintiff, without Plaintiff's permission.

91. Plaintiff's customer information was not available outside the company.

92. Plaintiff suffered damages in the use of its trade secrets to compete against it.

93. As such, Defendants violated the Illinois Trade Secrets Act 765 ILCS 1065.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT VII – COPYWRITE INFRINGEMENT

94. Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

95. Copyright infringement is actionable under § 501(a) of the Copyright Act, which provides that anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 is an infringer of the copyright. 17 U.S.C.S. § 501(a).

96. The exclusive rights of a copyright holder include reproducing, preparing derivative works of, and distributing copies of the copyrighted work. 17 U.S.C.S. § 106(1)-(3).

97. QBP posted copyrighted photos on its website with a notice of copyright.

98. QBP is the copyright holder of those photos.

99. Chicagoland copied QBP's photos and posted them on its website.

100. Chicagoland infringed on the exclusive rights of QBP as a copyright owner.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT VIII – VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510)

101.  Plaintiff repeats and realleges paragraphs 7 through 49 as if fully set forth herein.

102.  Chicagoland caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with QBP by its employees continuing use of QBP emails and by replacing QBP business cards and materials with its own at QBP displays.

103.  Chicagoland disparaged the goods, services, and business of QBP by false or misleading representations of fact posted on it Facebook page.

104.   As such, Defendants violated the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendant as follows:

- For lost profits;

- For damage to the business reputation of QBP;

- For punitive damages in an amount sufficient to deter similar misconduct from the Defendants;

- For costs of suit incurred herein;

- For attorney's fees pursuant to 815 ILCS 510/3; and

- For whatever additional relief this Court deems just and equitable.

Respectfully submitted,

McSwain Business Ventures, LLC

By: /s/ George W. Svoboda
    Attorney for Plaintiff, McSwain Business
    Ventures, LLC

George W. Svoboda
Atty #6220463
The Law Office of George W. Svoboda
17588 W Summit Dr
Grayslake, IL 60030
(224) 360-0696 – Phone
Email: george@georgesvobodalaw.com

# EXHIBIT "1"

## NON-COMPETE AGREEMENT

**THIS NON-COMPETE AGREEMENT** ("Agreement") is entered into as of the   1st
day of    January    2020    (the "**Effective Date**") by and between Quality Built Pergolas, (The Company)
with an address of  749 Commerce Parkway West Drive Suite K, Greenwood, IN 46143, (and the
"**Individual**"), John O'Brien - collectively "the **Parties.**"

1.      **Restricted Business.** The Individual acknowledges that the Company's primary business
is to provide and sell quality built residential and commercial structures such as pergolas, pavilions, and
other related structures, or products related thereto. By Signature hereunder, individual acknowledges that
he has read this Contract, and agrees to terms and conditions.  As such, Individual shall be restricted from
competing with the Company in any manner, or utilizing any Company secrets, or information, which
would compete with, or which he has learned, or maintained over the time of his employment with
Company, or contacting Companies clients (past and present) for the restricted period.

2**.**      **Restricted Period**. Individual agrees that he shall be restricted from competing in any
capacity with Company for a period of three (3) years beyond the termination of his relationship with
Company.

3.      **Restricted Territory.** Individual shall be restricted from competing with Company
within a       400     mile radius from home base or office

4.      **Restrictions.** During the restricted period and within the Restricted Territory
Company, Individual shall not directly or indirectly, or in any manner, own, manage, operate, join,
control, finance, or participate in the ownership, management, operations control of financing of, or be
connected as an officer, director, employee, partner, principal, agent, representative, or consult of any
entity engaged in the Restricted Business, without the prior, written consent of Company.

In addition, Individual agrees that he or she shall not in any manner operate, maintain, or be
employed at any company, or other employment that would erect, or build residential and commercial
structures such as pergolas, pavilions, and additional related products.

5.      **Non-Solicitation.** Individual further agrees not to solicit, either directly or indirectly, any
employees of Company to leave his/her employ with Company; and Individual agrees not to solicit, either
directly or indirectly, the business of any client and/or customer of Company.  Individual further agrees
that he shall not participate with any Company, or perform work for any company, or individual that if
that company competes in any manner with the residential and commercial structures set forth under
paragraph 1 of this Contract.

6.      **Consideration**. Company agrees to pay and Individual agrees to accept amount  TBD as
consideration to enter into this Non-Compete Agreement.

7.      **Confidential Information.** "Confidential Information" shall mean any and all technical
and non-technical information provided by Company, including but not limited to, any date, files, reports,
accounts, or any proprietary information in any way related to products, services, processes, database,
pans, methods, research, development, programs, software, authorship, customer lists, vendor lists,
suppliers, marketing and/or advertising plans, methods, reports, analysis, financial or statistical
information, and any other material related or pertaining to Company's business, it's subsidiaries,
respective clients, consultants or vendors that may be disclosed to Individual therein contained within the
terms of the Agreement.  Individual will not share any of this confidential information at any time.
Individual also will not sue any of this confidential information for his/her personal benefit at any time.
This section remains in full force and effect even after termination of the Agreement by its natural
termination or the earl termination by either party.

1

8.      **Restricted period** as set forth herein shall be the term of two (2) years. In addition to the "Confidential Information Agreement" as set forth in paragraph 7, Individual shall further not provide any information, diagrams, worksheets or other matters of the Company, and shall not participate in the building, or erection of any such structures as Company presently, or in the future maintains.

9.      **Acknowledgements.** Individual acknowledges that the restrictions, prohibitions and other provisions of this Agreement, including the Restricted Period and Restricted Territory, are reasonable, fair and equitable in scope, terms and duration, are necessary to protect the legitimate business interest of Company, and are a material inducement to Company to enter into this Agreement.

10.     **Representations and Warranties.**  Both Parties represent that they are fully authorized to enter into this Agreement.  The performance and obligations of either Party will not violate or infringe upon the rights of any third-party or violate any other agreement between the Parties, individually, and any other person, organization, or business or any law or governmental regulation.

11.     **Severability.** In the event any provision of this Agreement is deemed invalid or unenforceable, in whole or in part, that party shall be severed from the remainder of the Agreement and all other provisions should continue in full force and effect as valid and enforceable.

12.     **Waiver.** The failure by either party to exercise any right, power or privilege under the terms of this Agreement will not be construed as a waiver of any subsequent or further exercise of that right, power or privilege or the exercise of any other right, power or privilege.

13.     **Legal Fees.** In the event of a dispute resulting in legal action against Individual by Company, for any breach of the terms and conditions of this Agreement, Company shall be entitled to its legal fees, and any other costs of Company in the settlement, or pursuit of any action against Individual.

14.     **Legal and Binding Agreement.** This Agreement is legal and binding between the Parties as stated above.  This Agreement may be entered into and is legal and binding both in the United States and throughout Europe.  The Parties each represent that they have the authority to enter into this Agreement.

15.     **Governing Law and Jurisdiction.** The Parties agree that this Agreement shall be governed by the State and/or County in which Company is located. (Indianapolis, Indiana)

16.     **Entire Agreement.** The Parties acknowledge and agree that this Agreement represents the entire agreement between the Parties.  In the event that the Parties desire to change, add, or otherwise modify any terms, they shall do so in writing to be signed by both parties.  The Parties agree to the terms and conditions set forth above as demonstrated by their signatures as follows:

**"COMPANY" Don McSwain (Quality Built Pergolas)**
Signed: *Don M. McSwain*
By: Don McSwain
Date: 01-01-2020

**"INDIVIDUAL" John O'Brien (Individual)**
Signed:
By:
Date: